UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Diane M. Schmidt ) <br> 309 Yoakum Parkway ) <br> Unit #1011 ) <br> Alexandria, VA 22304 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **United States Capitol Police Board** ) <br> 119 D Street, N.E. ) <br> Washington, D.C. 20510 ) <br> ) <br>    SERVE: RONALD C. MACHEN, JR. ) <br>             United States Attorney ) <br>             for the District of Columbia ) <br>             555 Fourth St., N.W. ) <br>             Washington, D.C. 20004 ) <br> ) <br>    SERVE: ERIC HOLDER ) <br>             in his official capacity as the ) <br>             U.S. Attorney General, ) <br>             U.S. Department of Justice ) <br>             950 Pennsylvania Ave, N.W. ) <br>             Washington, D.C. 20530 ) <br> ) <br>    SERVE: TERRANCE W. GAINER ) <br>             in his official capacity as the ) <br>             Chairman of the USCPB, ) <br>             S-151 The Capitol ) <br>             Washington, D.C. 20510 ) <br> ) <br> AND ) <br> ) <br> **United States Capitol Police** ) <br> 119 D Street, N.E. ) <br> Washington, D.C. 20510 ) <br> ) | Civil Case No._____ <br><br> **JURY TRIAL DEMANDED** |

```
SERVE:  PHILLIP D. MORSE, SR.             )
        in his official capacity as the    )
        Chief of U.S. Capitol Police,      )
        119 D Street, N.E.                 )
        Washington, D.C. 20510             )
                                           )
AND                                        )
                                           )
Gretchen E. DeMar (Individually)           )
499 South Capitol St., S.W.                )
Suite 820                                  )
Washington, D.C. 20003                     )
                                           )
        Defendants.                        )
                                           )
```

## COMPLAINT

**COMES NOW** Diane M. Schmidt (hereinafter, "Plaintiff"), through her attorneys, Annette DeCesaris, Andrew D. Levy and the Law Office of Annette DeCesaris, Attorney At Law, LLC, and files this Complaint against the United States Capitol Police Board (hereinafter, "USCPB"), the United States Capitol Police (hereinafter, "USCP") the Employing Office, and Gretchen E. DeMar, her then supervisor, (hereinafter, "DeMar", and collectively with USCPB and USCP, "Defendants") asserting that Defendant have violated the Congressional Accountability Act of 1995, 2 U.S.C. § 1301, et seq. (hereinafter, "CAA"). Plaintiff asserts that Defendants have violated Section 201, 202 and 207 of the CAA, 2 U.S.C. §§ 1311, 1312 and 1317, respectively, by engaging in a pattern of harassment, discrimination, intimidation and retaliation against her and denying Plaintiff protections under the "Family and Medical Leave Act" by taking adverse actions against her including, but not limited to, failure to promote as outlined below, failing to complete annual performance appraisals, denying leave requests under the Family and Medical Leave Act, and creating a hostile work environment.

## NATURE OF THE ACTION

1.  Plaintiff is a United States Capitol Police civilian employee, with the USCPB and/or USCP, who was subjected to harassment, discrimination, intimidation, retaliation and a hostile work environment caused and created by Defendants' acts and omissions resulting in lack of promotions, forfeiture of leave, loss of pay and benefits, emotional, mental and physical distress based upon her age and sex.

2.  During all times pertinent, Defendants harassed Plaintiff based upon her age and sex. Defendants' actions and lack thereof created an intimidating, hostile and offensive work environment and that such actions were sufficiently severe or pervasive to interfere unreasonably with Plaintiff's work performance and work environment.

3.  Section 201 of the CAA, in 2 U.S.C. § 1311(a)(1), protects employees from discriminatory practices. This section mandates that "[a]ll personnel actions affecting covered employees shall be made free from any discrimination based on race, color, religion, sex or national origin within the meaning of section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2)."

4.  Section 202 of the CAA, in 2 U.S.C. § 1312 (a)(1) provides rights and protections for family and medical leave established by sections 101 through 105 of the Family and Medical Leave Act of 1993 (29 U.S.C. 2611 through 2615) which shall apply to covered employees.

5.  Section 207 of the CAA, in 2 U.S.C. § 1317 (a), protects employees from intimidation and discrimination. The CAA mandates that "[i]t shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under the chapter."

## JURISDICTION AND VENUE

6. Jurisdiction is proper pursuant to 2 U.S.C. § 1408 of the CAA. In addition, jurisdiction is proper under 28 U.S.C. § 1331.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b). Venue is proper in the District of Columbia because the acts and practices complained of herein occurred in the District of Columbia.

## PARTIES

8. Plaintiff is a civilian employed by the USCPB and is a "covered employee" under the CAA, 2 U.S.C. § 1301 (3) (D).

9. Plaintiff is a member of two protected classes relating to employment discrimination, pursuant to federal statutes, based upon:

   a. her age of 50 years, which is within the meaning of section 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a); and

   b. her sex, which is within the meaning of section 703 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-2).

10. Defendant, USCPB, is an "employing office" under the CAA, 2 U.S.C. § 1301 (9) (D).

11. Defendant, USCPB, a collective, consisting of three officers of the United States Congress: the Architect of the Capitol, Stephen T. Ayers; the Sergeant at Arms of the United States Senate, Terrance W. Gainer; and the Sergeant at Arms of the United States House of Representatives, Wilson Livingood. United States Capitol Police Chief, Phillip D. Morse, Sr., also serves on the Board, but in an ex officio capacity. Collectively, Defendant, USCPB, pursuant to 2 U.S.C. § 1301, is the "employing office" of United States Capitol Police members and civilians.

12. Defendant, USCP is also considered Plaintiff's "employing office."

13 Defendant, Gretchen DeMar, at all times pertinent, was the General Counsel to the United States Capitol Police and Plaintiff's supervisor.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. On October 14, 2010, Plaintiff filed a Request for Counseling at the Congressional Office of Compliance (hereinafter, "OOC") as mandated by the CAA. The counseling period prescribed by the CAA began on October 14, 2010.

15. On or about November 23, 2010, Plaintiff received a Notice to Employee of End of Counseling Period in Case No. 11-CP-04 (CV, DA, FM, RP), issued on November 23, 2010, for the counseling period that began on October 14, 2010 and ended on November 15, 2010.

16. On December 14, 2010, Plaintiff submitted a timely Request for Mediation to the OOC in Case No. 11-CP-04 (CV, DA, FM, RP).

17. Mediation was extended by a series of joint requests of the parties until March 1, 2011.

18. Plaintiff attended mediation in person with assistance of her undersigned counsel but was unable to come to any settlement of the matter with Defendants.

19. On March 8, 2011, Plaintiff received an "End of Mediation Notice", dated March 4, 2011, from the OOC in Case No. 11-CP-04 (CV, DA, FM, RP).

20. Plaintiff has exhausted her administrative remedies by completing the counseling and mediation required under the CAA, 2 U.S.C. §§ 1401-1403, for her claims of harassment, discrimination, intimidation and hostile work environment under 2 U.S.C. §§ 1311, 1312 and 1317.

## DEFINITIONS

21. "PECS" is the Performance Evaluation and Communication System which is an integral part of the USCP's strategic and performance planning process. It is designed to communicate to employees their performance expectations and how well they meet those expectations. It is also used to identify the need for and appropriateness of awards and recognition, promotions, training and development investments, performance improvement actions and related matters. PECS is the annual performance appraisal process, and it applies to all sworn and civilian employees of USCPB and USCP, except for those covered by the Executive Performance Appraisal System directive.

## FACTS

22. Plaintiff has been employed by the USCPB/USCP since 1986. From January 27, 1986 to September 2005, she was a Police Officer with the highest rank of Sergeant.

23. In September 2005, Plaintiff agreed to a transfer from her sworn officer's position to a civilian one, a Legal Administrative Analyst, in the Office of the General Counsel, thereby forgoing her "law enforcement" retirement potential.

24. Plaintiff agreed to the transfer to the civilian position based upon the representations and promises by the then General Counsel (who is not a party to this action) to the USCPB that:

    a. the position was a "non-competitive career ladder promotion" position;

    b. after the successful completion of the first year, Plaintiff would be promoted from a Grade 12 to a Grade 13, Step 1; and

    c. every year thereafter, Plaintiff would be promoted to the next step as a Grade 13 civilian employee on the "non-competitive career ladder."

25. DeMar was, at all times pertinent, Plaintiff's direct supervisor.

26. In September 2005, as a civilian Legal Administrative Analyst, Plaintiff was paid as Grade CP-12/Step 1, at the annual rate of $101,578.00.

27. In September 2006, after the successful completion of Plaintiff's first year as a Legal Administrative Analyst, she requested that she be promoted to a Grade 13/Step 1, with an annual pay of $117,315; however, DeMar ignored her request, and refused to comply with the PECS and did not complete an annual performance appraisal of Plaintiff.

28. In September of 2006, instead of promoting Plaintiff to a Grade 13/Step 1, she was promoted to a Grade 12/Step 2 with an annual pay of $107,094.00, without the implementation of the PECS or any explanation from Defendants.

29. In September of 2007, after the successful completion of Plaintiff's second year as a Legal Administrative Analyst, she again requested that she be promoted as promised to a Grade 13/Step 2 with an annual pay of $122,731.00; however, DeMar again ignored her request, and refused to comply with the PECS and did not complete an annual performance appraisal of Plaintiff.

30. In September of 2007, instead of promoting Plaintiff to a Grade 13/Step 2, she was promoted to a Grade 12/Step 3 with an annual pay of $112,002.00, without the implementation of the PECS or any explanation from Defendants.

31. In September of 2008, after the successful completion of Plaintiff's third year as a Legal Administrative Analyst, she again requested that she be promoted as promised to a Grade 13/Step 3 with an annual pay of $130,631.00; however, DeMar again ignored her request, and refused to comply with the PECS and did not complete an annual performance appraisal of Plaintiff.

32. In September of 2008, instead of promoting Plaintiff to a Grade 13/Step 3, she was promoted to a Grade 12/Step 4 with an annual pay of $119,190.00, without the implementation of the PECS or any explanation from Defendants.

33. In September of 2009, after the successful completion of Plaintiff's fourth year as a Legal Administrative Analyst, she again requested that she be promoted as promised to a Grade 13/Step 4 with an annual pay of $139,399.00; however, DeMar again ignored her request, and refused to comply with the PECS and did not complete an annual performance appraisal of Plaintiff.

34. In September of 2009, instead of promoting Plaintiff to a Grade 13/Step 4, she remained as a Grade 12/Step 4 with an annual pay of $124,887.00, without the implementation of the PECS or any explanation from Defendants.

35. In September of 2010, after the successful completion of Plaintiff's fifth year as a Legal Administrative Analyst, she again requested that she be promoted as promised to a Grade 13/Step 5 with an annual pay of $142,772.00; however, DeMar again ignored her request, and refused to comply with the PECS and did not complete an annual performance appraisal of Plaintiff.

36. In September of 2010, instead of promoting Plaintiff to a Grade 13/Step 5, she was promoted to a Grade 12/Step 5 with an annual pay of $130,244.00, without the implementation of the PECS or any explanation from Defendants.

37. Plaintiff requested promotions as outlined herein over a six year period, but she never received the increases in Grade and Step, as expected and requested, although other employees in her office received such promotions and increases.

38. On or about April 25, 2011, Plaintiff was transferred to the Office of the Chief of the USCP.

39. During her tenure as a Legal Administrative Analyst in the Office of the General Counsel, Plaintiff requested advancements of leave for personal and family medical issues pursuant to the Family and Medical Leave Act; however, most requests were denied although others were granted such advancements of leave.

40. In 2009, Plaintiff requested a 40-hour advancement of leave for personal and family medical issues pursuant to the Family and Medical Leave Act, which was denied by Defendants; however, Defendant, Gretchen DeMar, and others were granted their requests for advanced leave.

41. In 2009, Defendant, Gretchen DeMar, requested approximately 6 months of advanced leave, pursuant to the Family and Medical Leave Act, and her requests for the 6 months of advanced leave were granted.

42. In June 2010, a co-worker requested 48 to 80 hours of vacation leave although he had only worked in the Office of General Counsel for approximately 2 months.

43. In 2010, Plaintiff requested numerous authorizations to perform her duties under the *Telework* policy as set forth in the USCP Interim Guidance: Telework Memorandum, dated May 17, 2010; however, her requests were denied.

44. In 2010, Defendant, Gretchen DeMar, and other co-workers requested authorizations to perform their duties under the *Telework* policy, described above, and their requests were granted.

45. During her tenure as a Legal Administrative Analyst in the Office of the General Counsel, on a daily basis, Plaintiff was mistreated, harassed, intimidated and disrespected by Defendant, Gretchen DeMar, and other employees.

46. There were often times that Defendant, Gretchen DeMar, refused to speak directly to Plaintiff although they were physically in the same office.

47. On an almost daily basis, Defendant, Gretchen DeMar, and other employees harassed Plaintiff with a continuous stream of text messages; although they were all physically in the same office.

48. Often, when Plaintiff was on leave, Defendant, Gretchen DeMar, and other employees harassed Plaintiff with e-mails, text messages and telephone messages demanding that she contact them although she was on leave.

49. On October 14, 2010, Plaintiff filed a Request for Counseling at the OOC as mandated by the CAA and continued through with all administrative remedies ending in unsuccessful mediation on March 1, 2011.

50. Plaintiff has exhausted her administrative remedies.

51. Plaintiff engaged in protected activities in 2010 by filing and pursuing a complaint with the OOC, which was not resolved.

52. After the March 1, 2011, mediation, Defendants threatened to demote and/or fire Plaintiff; however, she was ultimately transferred to the Office of the Chief of USCP on or about April 25, 2011, and currently remains in said position.

53. As a direct and proximate cause of the actions set forth herein, Plaintiff has suffered and continues to suffer damages, including, but not limited to, emotional, mental and physical distress, lack of promotions, forfeiture of leave and retirement benefits, the loss of pay and other benefits, which continues to this day, as well as attorney fees and other damages.

## COUNT I: CAA SECTION 201

54. Plaintiff hereby incorporates paragraphs 1-53 above by reference.

55. Defendants' adverse actions against Plaintiff, based upon her sex and age, including but not limited to, their refusals to promote Plaintiff, as set forth above, were pretextual and in violation of the protections prohibiting discriminatory practices against employees as set forth in Section 201 of the CAA.

56. Defendants' disparate pay treatment of Plaintiff, based upon sex and age, was pretextual and in violation of the protections prohibiting discriminatory practices against employees as set forth in Section 201 of the CAA.

57. Defendants' adverse actions against Plaintiff, based upon her sex and age, including but not limited to, their refusal to grant her advance leave requests and their refusal to treat her the same as other employees in similar situations were pretextual and in violation of the protections, provided to Plaintiff under CAA Section 201, prohibiting discriminatory practices against employees.

58. Defendants' disparate treatment of Plaintiff, based upon sex and age, through their denial of her requests for advance leave was pretextual and in violation of the protections prohibiting discriminatory practices against employees as set forth in Section 201 of the CAA.

59. Defendants' adverse actions against Plaintiff, based upon her sex and age, including but not limited to, their refusal to grant her requests for authorizations to perform her duties under the *Telework* policy, described above, and Defendants' failure and refusal to treat her the same as other employees in similar situations were pretextual and in violation of the protections, provided to Plaintiff under CAA Section 201, prohibiting discriminatory practices against employees.

60. Defendants' disparate treatment of Plaintiff, based upon sex and age, through Defendant's denial of Plaintiff's requests for authorizations to perform her duties under the *Telework* policy, described above, was pretextual and in violation of the protections prohibiting discriminatory practices against employees as set forth in Section 201 of the CAA.

61. The failure and refusal of Defendants to promote Plaintiff, from 2006 to 2010, because of her age and sex, is a personnel action amounting to unlawful discrimination based on age and sex.

62. The failure and refusal of Defendants to grant Plaintiff's advance leave requests is a personnel action amounting to unlawful discrimination based on age and sex.

63. The failure and refusal of Defendants to grant Plaintiff's request for authorizations to perform her duties under the *Telework* policy is a personnel action amounting to unlawful discrimination based on age and sex.

64. Plaintiff is and has been highly qualified and has successfully completed five years in her position of Legal Administrative Analyst in the Office of the General Counsel, and repeatedly applied for promotions to Grade 13, after her first successful year; however, Defendants repeatedly denied her the promotions because of her age and sex.

65. The effect of Defendants' discriminatory employment practices and actions taken as set forth above was to deprive Plaintiff of pay, benefits and privileges

and otherwise adversely affect and alter the terms and conditions of Plaintiff's employment.

66.     As a direct and proximate cause of the actions set forth herein, Plaintiff has suffered and continues to suffer damages, including, but not limited to, emotional, mental and physical distress, lack of promotions, forfeiture of leave and retirement benefits, the loss of pay and other benefits, which continues to this day, as well as attorney fees and other damages.

### COUNT II:   CAA SECTION 202

67.     Plaintiff hereby incorporates paragraphs 1-66 above by reference.

68.     During her tenure as a Legal Administrative Analyst in the Office of the General Counsel, Plaintiff requested advancements of leave for personal and family medical issues pursuant to the Family and Medical Leave Act; however, most requests were denied although others were granted such advancements of leave.

69.     In 2009, Plaintiff requested a 40-hour advancement of leave for personal and family medical issues pursuant to the Family and Medical Leave Act Plaintiff which was denied by Defendants; however, Defendant, Gretchen DeMar, and others were granted their requests for such leave.

70.     In 2009, Defendant, Gretchen DeMar requested approximately 6 months of advanced leave, pursuant to the Family and Medical Leave Act, and her requests for the 6 months of advanced leave were granted.

71.     In June 2010, a co-worker requested 48 to 80 hours of vacation leave although he had only worked in the Office of General Counsel for approximately 2 months.

72.     Defendants' adverse actions against Plaintiff, based upon her sex and age, including but not limited to, their refusal to grant her advance leave requests and their refusal to treat her the same as other employees in similar situations were pretextual and in violation of the protections, provided to Plaintiff under CAA Sections 201 and 202, prohibiting discriminatory practices against employees.

73.     Defendants' disparate treatment of Plaintiff, based upon sex and age, through their denial of her requests for advance leave was pretextual and in violation of

the protections prohibiting discriminatory practices against employees as set forth in Sections 201 and 202 of the CAA.

74. The failure and refusal of Defendants to grant Plaintiff's advance leave requests is a personnel action amounting to unlawful discrimination based on age and sex.

75. The effect of Defendants' discriminatory employment practices and actions taken as set forth above was to deprive Plaintiff of pay, benefits and privileges and otherwise adversely affect and alter the terms and conditions of Plaintiff's employment.

76. As a direct and proximate cause of the actions set forth herein, Plaintiff has suffered and continues to suffer damages, including, but not limited to, emotional, mental and physical distress, lack of promotions, forfeiture of leave and retirement benefits, the loss of pay and other benefits, which continues to this day, as well as attorney fees and other damages.

## COUNT III:  CAA SECTION 207

77. Plaintiff hereby incorporates paragraphs 1-76 above by reference.

78. During her tenure as a Legal Administrative Analyst in the Office of the General Counsel, Plaintiff was mistreated, humiliated, harassed, intimidated and disrespected by Defendant, Gretchen DeMar, and other employees, on an almost daily basis.

79. There were often times that Defendant, Gretchen DeMar, refused to speak directly to Plaintiff although they were physically in the same office.

80. On an almost daily basis, Defendant, Gretchen DeMar, and other employees harassed Plaintiff with a continuous stream of text messages; although they were all physically in the same office.

81. Often, when Plaintiff was on leave, Defendant, Gretchen DeMar and other employees harassed Plaintiff with text messages and telephone messages demanding that she contact them although she was on leave; however, other employees were not treated in a like manner.

82. More specifically, after the unsuccessful mediation, Plaintiff was so emotional, mentally and physically stressed, that she was under constant medical care.

83. After the March 1, 2011, mediation, when Plaintiff was medically unable to work due the stress caused by Defendants, especially DeMar, who demanded that Plaintiff provide DeMar Plaintiff's medical condition despite Plaintiff's production of doctor's notes.

84. After the March 1, 2011, mediation, while at home and under the care and supervision of her doctor, DeMar constantly e-mailed Plaintiff demanding that she return to work.

85. Defendants wrongfully served Plaintiff with a "Leave Restriction" report which required Plaintiff to provide medical documentation for every hour she was not at work although she had previously provided said documentation.

86. Defendants service of the "Leave Restriction" report was done in contravention to the policies of the USCPB/USCP' Human Resources Department.

87. Defendants service of the "Leave Restriction" report was done in retaliation and to merely harass and intimidate Plaintiff.

88. Defendants' disparate treatment of Plaintiff violated Section 207 of the CAA, and amounted to intimidation, and the creation of a hostile and offensive work environment and that such actions were sufficiently severe and pervasive to interfere unreasonably with Plaintiff's work performance and work environment.

89. The effect of Defendants' discriminatory employment practices, intimidation, humiliation and creation of a hostile and offensive work environment as set forth above was to deprive Plaintiff of pay, benefits and privileges and otherwise adversely affect and alter the terms and conditions of Plaintiff's employment.

90. As a direct and proximate cause of the actions set forth herein, Plaintiff has suffered and continues to suffer damages, including, but not limited to, emotional, mental and physical distress, lack of promotions, forfeiture of leave and retirement benefits, the loss of pay and other benefits, which continues to this day, as well as attorney fees and other damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this honorable Court grant the following relief:

A. A declaration that Defendants, jointly and/or severally, have violated Sections 201, 202 and 207 of the CAA;

B. For Plaintiff, an award to be paid by Defendants, jointly and/or severally, of back pay for lost wages and benefits, and interest on such amounts from September 1, 2006, to the date judgment is entered in this case, in an amount to be determined at trial, due to the discriminatory actions of Defendants' failure and refusal to promote Plaintiff as set forth in this Complaint;

C. Direct Defendants, jointly and severally, to pay Plaintiff compensatory damages in an amount to be determined at trial for suffering, mental anguish, emotional pain and physical distress, humiliation, embarrassment, inconvenience and other pecuniary and non-pecuniary losses pursuant to 2 U.S.C. § 1311(b)(1) and (2) of the CAA resulting from Defendants' unlawful discrimination and other adverse actions against Plaintiff;

D. Direct Defendants, jointly and severally, to pay Plaintiff compensatory damages in an amount to be determined at trial for suffering, mental anguish, emotional pain and physical distress, humiliation, embarrassment, inconvenience and other pecuniary and non-pecuniary losses pursuant to 2 U.S.C. § 1312(b) of the CAA resulting from Defendants' unlawful discrimination and other adverse actions against Plaintiff;

E. Direct Defendants, jointly and severally, to pay Plaintiff compensatory damages in an amount to be determined at trial for suffering, mental anguish, emotional pain and physical distress, humiliation, embarrassment, inconvenience and other pecuniary and non-pecuniary losses pursuant to 2 U.S.C. § 1317(b) of the CAA resulting from Defendants' unlawful discrimination and other adverse actions against Plaintiff;

F. Order Defendants, jointly and severally, to pay Plaintiff's reasonable costs and expenses including attorney fees, expert fees and other fees relating to this litigation; and

G. Such other relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff herewith demands a trial by jury under 2 U.S.C. § 1408(c) on all issues.

Respectfully submitted,

_____
Annette DeCesaris, Esquire
DC Bar #MD15002
Andrew D. Levy, Esquire
DC Bar #463434
Annette DeCesaris, Attorney At Law, LLC
4303 Northview Drive
Bowie, Maryland 20716
Tel: (301) 809-6200
Fax: (301) 805-1275
E-mails: adecesaris@mdlawyer.biz
         alevy@mdlawyer.biz

Attorneys for Plaintiff, Diane M. Schmidt

Date:   June 3, 2011