**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
DIANE M. SCHMIDT,                               )
                                                )
            Plaintiff,                          )
                                                )
      v.                                        )      Civil Action No. 11-1028 (RBW)
                                                )
UNITED STATES                                   )
CAPITOL POLICE BOARD,                           )
                                                )
            Defendant.                          )
_____)

## MEMORANDUM OPINION

The plaintiff, Diane M. Schmidt, filed her complaint on June 3, 2011, claiming that her

employer, the United States Capitol Police Board ("USCPB"),[1] violated Sections 201, 202, and

207 of the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301-1438,[2] by engaging in

a pattern of harassment, discrimination, intimidation, and retaliation against her on the basis of

her sex and age, subjecting her to disparate treatment by denying her requests for leave under the

Family and Medical Leave Act, and by taking adverse employment actions against her, including

its failure to promote and complete her annual performance reviews.  Plaintiff's Complaint

("Compl.") at 1.  Currently before the Court is the defendant's Motion to Dismiss the Plaintiff's

Complaint.  <u>See</u> Agency Defendants' Motion to Dismiss ("Defs.' Mot.") at 1.  Upon careful

---

[1]       The plaintiff's complaint originally listed three defendants: the USCPB, the United States Capitol Police, and her former supervisor, Ms. Gretchen E. DeMar.  Subsequently, the plaintiff consented to the dismissal of the latter two defendants.  Accordingly, Defendant DeMar's Motion to Dismiss is now moot.

[2]       In the complaint, the plaintiff refers to the relevant sections of the CAA as Sections 201, 202, and 207.  Sections 201, 202, and 207 are codified at 2 U.S.C. § 1311, 2 U.S.C. § 1312, and 2 U.S.C. § 1317, respectively, and the Court will accordingly refer to them in that manner from this point forward.

consideration of all of the relevant submissions made by the parties,[3] the Court will grant the USCPB's motion to dismiss with respect to all of the plaintiff's discrete claims brought under § 1311 and § 1312 that occurred prior to April 2010, as well as the plaintiff's § 1317 retaliation claim, for lack of subject-matter jurisdiction.  The Court will also grant the defendant's motion to dismiss the plaintiff's § 1312 claim that she was continually denied family and medical leave and the option to work at home under the defendant's purported Telework policy,[4] because the plaintiff has not demonstrated that this Court has subject-matter jurisdiction over that claim.  The Court will grant the defendant's motion to dismiss under Rule 12(b)(6) the plaintiff's timely § 1311 claim that she was denied a promotion to the Grade 13/Step 5 level in September 2010, because the plaintiff does not allege with sufficient specificity why the failure to promote her to a higher paygrade amounted to disparate treatment, or how that purportedly disparate treatment was based on gender or age.  Finally, the Court will grant the defendant's motion to dismiss the plaintiff's additional "continuing violation" claims—that she was continually harassed in the workplace and that her co-workers' actions created a hostile work environment—because she similarly fails to present any facts supporting this claim.

---

[3]      In addition to the documents already referenced, in deciding this motion, the Court also considered the following submissions: the defendants' Memorandum of Points and Authorities in Support of Agency Defendants' Motion to Dismiss ("Defs.' Mem."), the plaintiff's Memorandum in Opposition to Agency Defendants' Motion to Dismiss ("Pl.'s Opp'n"), the Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Defs.' Reply"), and the Plaintiff's Notice of Voluntary Dismissal ("Pl.'s Notice").

[4]      Nowhere in the complaint does the plaintiff explain the "Telework policy."  The Court will assume, based on the plaintiff's claims, that the policy involves the privilege of working from home using electronic communication for a period of time, a privilege that an employee must request and that can only be granted by an employee's supervisor.

## I.  BACKGROUND

The plaintiff is a fifty-year-old woman who has been employed by the USCPB since 1986.  Compl. ¶¶ 9(a),f 22.  Between January 27, 1986 and September 2005, she was a United States Capitol police officer, who ultimately reached the rank of sergeant.  Id.  In September 2005, the plaintiff decided to transfer from her position as a police officer to a civilian position, and began working as a Legal Administrative Analyst in the Office of the General Counsel at the USCPB.  Id. ¶ 23.  The plaintiff maintains that she agreed to transfer to the civilian position because the prior General Counsel promised her that "the position was a 'non-competitive career ladder promotion' position," and that "after the successful completion of the first year, [she] would be promoted from a Grade 12 to a Grade 13, Step 1[,] and every year thereafter, [she] would be promoted to the next step as a Grade 13 civilian employee on the 'non-competitive career ladder.'"  Id. ¶ 24.

When she began working as a Legal Administrative Analyst in September 2005, the plaintiff earned $101,578 annually, which is the paygrade for a Grade 12/Step 1 employee.  Id. ¶ 26.  The next year, in September 2006, the plaintiff requested a promotion to the Grade 13/Step 1 level, which paid $117,315.  Id. ¶ 27.  According to the plaintiff, her supervisor, Gretchen E. DeMar, id. ¶ 25, ignored her request and refused to complete an annual performance review of her work.  Id. ¶ 27.  However, the plaintiff was advanced to the Grade 12/Step 2 paygrade, with an annual salary of $107,094.  Id. ¶ 28.  The following year, in September 2007, the plaintiff requested a promotion to the Grade 13/Step 2 level, which had an annual salary of $122,731, as she asserts she had been promised, but this request was also denied and no performance review of her work was conducted.  Id. ¶ 29.  Instead, the plaintiff was elevated to the Grade 12/Step 3 level, which resulted in her being paid $112,002 annually.  Id. ¶ 30.  Similarly, in September

2008, the plaintiff requested that she be promoted to the Grade 13/Step 3 level, which would have paid her $130,361 per year, but her request was again denied and no performance review of her work was conducted.  Id. ¶ 31.  Instead, the plaintiff was advanced to the Grade 12/Step 4 level and paid $119,190 annually.  Id. ¶ 32.  In September 2009, the plaintiff requested a promotion to the Grade 13/Step 4 level, which paid $139,399 per year, but her request was denied, no performance review was completed, id. ¶ 33, and she remained at the Grade 12/Step 4 level but her annual salary was increased to $124,887, id. ¶ 34.  Finally, in September 2010, the plaintiff requested a promotion to the Grade 13/Step 5 level, which paid a salary of $142,772 per year, but her request was denied, no performance review was completed, id. ¶ 35, and she was instead advanced to the Grade 12/Step 5 level and paid $130,244 annually, id. ¶ 36.

Thus, according to the plaintiff, from September 2006, through September 2010, the plaintiff annually requested promotions she had allegedly been promised by the prior General Counsel when she transferred to the civilian position, and each year her request was denied.  Id. ¶¶ 27-37.  She further contends that no annual performance review of her work was ever conducted, id. ¶¶ 27-35, and that other employees in her office received the promotions and salary increases that she had been promised, id. ¶ 37.

During her tenure as a Legal Administrative Analyst, the plaintiff alleges that Ms. DeMar and other employees of the USCPB "mistreated, harassed, intimidated[,] and disrespected" her on a daily basis.  Id. ¶ 45.  Specifically, the plaintiff states that "[t]here were often times that [Ms.] DeMar[] refused to speak directly to [her] even though they were physically in the same office," id. ¶ 46, and that "[o]n an almost daily basis, [Ms.] DeMar[] and other employees harassed [her] with a continuous stream of text messages[,] although they were all physically in the same office," id. ¶ 47.  The plaintiff also alleges that when she was on medical leave "[Ms.]

DeMar[] and other employees harassed [her] with e[-]mails, text messages[,] and telephone messages demanding that she contact them." Id. ¶ 48.

The plaintiff alleges various additional instances of discriminatory treatment in addition to the annual denials of her specific requests for promotions to the Grade 13 level. For example, the plaintiff asserts that during her tenure as a Legal Administrative Analyst, "[she] requested advancements of leave for personal and family medical issues pursuant to the Family and Medical Leave Act; however, most requests were denied although other[ employees] were granted such advancements of leave." Id. ¶ 39. Specifically, the plaintiff states that "[i]n 2009, [she] requested a 40-hour advancement of leave for personal and family medical issues . . . which was denied," id. ¶ 40, even though other employees' requests for longer periods of leave were granted, id. ¶¶ 40-41. The plaintiff further alleges that in 2010 she was denied the opportunity to work from home under the Capitol Police's Telework policy, while other employees were allowed to do so. Id. ¶¶ 43-44.

On October 14, 2010, the plaintiff filed a Request for Counseling with the Office of the Chief ("OOC"), as required by the CAA, id. ¶ 49, in which she alleged "harassment, unfair discipline, lack of promotion, disparate treatment[,] and denial of advanced paid leave for FMLA purposes because of sex, disability, and reprisal in violation of sections 201, 202[,] and 207 of the [CAA]," Defs.' Mem., Exhibit ("Ex.") 1 at 1. The plaintiff then completed the CAA-mandated mediation process on March 1, 2011, which was ultimately unsuccessful. Compl. ¶ 49. The plaintiff alleges that after the mediation in March 2011, "[the d]efendants threatened to demote and/or fire [her]; however, she was ultimately transferred to the Office of the Chief of USCP[B] on or about April 25, 2011," where she is currently employed. Id. ¶ 52.

The plaintiff's complaint alleges three violations of the CAA: (1) that she was unlawfully discriminated against under § 1311 due to her sex and age, (2) that she was denied the right to family and medical leave under § 1312, and (3) that her supervisor and the USCPB unlawfully retaliated against her for initiating the mediation proceedings under § 1317.  Id. at 1. Specifically, the plaintiff claims that the USCPB's failure to promote her annually as promised, id. ¶¶ 55-56, failure to grant her requests for family and medical leave, and failure to grant her requests to work from home under the defendant's Telework policy while allowing other employees to do so, id. ¶¶ 57-60, constituted unlawful discrimination.  Additionally, she alleges that the treatment she endured as a result of the actions of her supervisor and other employees, such as refusing to speak to her directly while in the office, sending her a flood of text messages while in the office, and constantly harassing her with e-mails and text messages while she was on leave is further evidence of discrimination.  Id. ¶¶ 78-81.  The plaintiff also claims that after bringing this behavior to the attention of the OCC and going through the required mediation process, her supervisor and other employees retaliated against her by demanding that she provide evidence of the medical condition that prevented her from working despite having already provided the defendant "doctor's notes," id. ¶ 83, constantly e-mailing her while she was on leave demanding that she return to work, and requiring her to provide medical documentation for every hour she was not at work even though she had already provided such documentation.  Id. ¶¶ 82-87.

The defendant argues in its motion to dismiss that the plaintiff did not exhaust her administrative remedies, as is required in order for this Court to have subject-matter jurisdiction over her claims.  Defs.' Mem. at 7.  The defendant further maintains that the plaintiff has asserted

claims for which relief cannot be granted, because some of the claims are based on the

"continuing violation" doctrine, id. at 7-8, which is not applicable to each claim asserted.

## II. STANDARDS OF REVIEW

A.  Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed

if a district court lacks subject-matter jurisdiction to entertain the claim.  Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(6), on the other hand, requires a court to dismiss "a claim upon which relief can[not]

be granted."  Fed. R. Civ. P. 12(b)(6).  When a defendant files a motion to dismiss under Rule

12(b)(1) and Rule 12(b)(6), this Circuit has held that the court must first examine the Rule

12(b)(1) challenges, U.S. ex rel. Settlemire v. District of Columbia, 198 F.3d 913, 920 (D.C. Cir.

1999), because "if it must dismiss the complaint for lack of subject[-]matter jurisdiction, the

accompanying defenses and objections become moot and do not need to be determined," Epps v.

U.S. Capitol Police Bd., 719 F. Supp. 2d 7, 12 (D.D.C. 2010) (citing Rhulen Agency, Inc. v. Ala.

Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir.1990)); see also Bell v. Hood, 327 U.S. 678, 682

(1946) (holding that a motion to dismiss for failure to state a claim may be decided only after

finding subject-matter jurisdiction).

Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must

scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant

to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6).  Macharia v.

United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); Epps, 719 F. Supp. 2d at 12; Grand Lodge

of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  In deciding a

motion to dismiss challenging the Court's subject-matter jurisdiction under Rule 12(b)(1), a

court must "accept as true all of the factual allegations contained in the complaint" and draw all

reasonable inferences in favor of the plaintiff, <u>Brown v. District of Columbia</u>, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but courts are "not required . . . to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations," <u>Rann v. Chao</u>, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).  Further, the "court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case."  <u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  Ultimately, the plaintiff bears the burden of establishing the Court's jurisdiction, <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 182-83 (1936), and where subject-matter jurisdiction does not exist, "the court cannot proceed at all in any cause," <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998).

<u>B.  Rule 12(b)(6)</u>

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and while "detailed factual allegations" are not necessary, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," <u>Ashcroft v. Iqbal</u>, __ U.S. __ , __ 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 562-63 (2007).  Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Iqbal</u>, __ U.S. at __ , 129 S. Ct. at 1949 (2009); <u>Twombly</u>, 550 U.S. at 562-63.  The court "must treat the complaint's factual allegations as true, and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citations omitted); <u>see also Holy Land Found. for Relief & Dev. v. Ashcroft</u>, 333 F.3d 156, 165

(D.C. Cir. 2003); <u>Browning v. Clinton</u>, 292 F.3d 235, 242 (D.C. Cir. 2002); <u>Schuler v. U.S.</u>, 617 F.2d 605, 608 (D.C. Cir. 1979) (explaining that the facts in the complaint should be "liberally construed . . . in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged") (internal quotation marks and citations omitted).  A claim is considered plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, __ U.S. at __, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 556).  The Supreme Court has clarified that plausibility "is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

## III. LEGAL ANALYSIS

### A.  The Congressional Accountability Act (CAA)

Sections 1311 and 1312 of Title 2 of the United States Code guarantee the protections provided by the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Family and Medical Leave Act to employees in specific departments of the legislative branch.[5]  The CAA requires an employee alleging violations of a civil right protected by § 1311 to utilize certain administrative procedures, which include counseling and mediation.[6]  2 U.S.C.

---

[5]      2 U.S.C. § 1301(3) provides that employees covered by the CAA include individuals working in the House of Representatives, the Senate, the Capitol Guide Service, the Capitol Police, the Congressional Budget Office, the Office of the Architect of the Capitol, the Office of the Attending Physician, the Office of Compliance, and the Office of Technology Assessment.

[6]      The administrative procedure described in § 1401 reads:
> Except as otherwise provided, the procedure for consideration of alleged violations of part A of subchapter II of this chapter consists of—
> (1) counseling as provided in section 1402 of this title;
> (2) mediation as provided in section 1403 of this title; and
> (3) election, as provided in section 1404 of this title, of either—
> (A) a formal complaint and hearing as provided in section

(continued . . .)

§ 1401.  As set forth in § 1402 and § 1403 of the CAA, an employee's request for counseling must be made within 180 days of the alleged violation.  2 U.S.C. §§ 1402-03.  Then, within fifteen days after receiving a notice of completed counseling, that employee must file a request for mediation.  See id. § 1403.  Furthermore, pursuant to § 1408(a) of the CAA, an aggrieved employee must complete these administrative requirements before a district court will have subject-matter jurisdiction over an employee's claims.  2 U.S.C. § 1408(a).[7]

The District of Columbia Circuit has recognized that a district court will not have subject-matter jurisdiction over a claim arising under § 1311 until a plaintiff has fully complied with the administrative process mandated by the CAA.  See, e.g., Blackmon-Malloy v. U.S. Capitol Police Bd., 575 F.3d 699, 705-06 (D.C. Cir. 2009) (stating that "it is apparent from the plain terms of the [CAA's] text that Congress intended counseling and mediation to be jurisdictional requirements"); see also Hyson v. Architect of Capitol, __ F. Supp. 2d __ , __ , 2011 WL 3489128, at *4 (D.D.C. 2011) ("[T]he CAA requires that employees follow the counseling and mediation procedures prescribed therein before bringing a CAA claim in federal court . . . These exhaustion requirements are jurisdictional in nature.").  Furthermore, as this Court has previously

---

( . . . continued)

     1405 of this title, subject to Board review as provided in section 1406 of this title, and judicial review in the United States Court of Appeals for the Federal Circuit as provided in section 1407 of this title, or
     (B) a civil action in a district court of the United States as provided in section 1408 of this title.

[7] 2 U.S.C. § 1408(a) states:

     The district courts of the United States shall have jurisdiction over any civil action commenced under section 1404 of this title and this section by a covered employee who has completed counseling under section 1402 of this title and mediation under section 1403 of this title. A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation.

held, "the completion of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that occurred after counseling had commenced; the administrative remedies must be exhausted for each claim." Gordon v. Office of the Architect of the Capitol, 750 F. Supp. 2d 82, 92-93 (D.D.C. 2010) (citing Halcomb v. Office of the Senate Sergeant-At-Arms of the U.S. Senate, 209 F. Supp. 2d 175, 177-79 (D.D.C. 2002).  Therefore, in order for this Court to have subject-matter jurisdiction over the plaintiff's claims, the plaintiff must have completed the requisite counseling and mediation, within the prescribed statutory periods, for each claim on which she seeks relief.

## B.  The Continuing Violations Doctrine

Before turning to whether the plaintiff's claims survive the defendant's Rule 12(b)(1) arguments for dismissal, the Court must first address a separate legal issue.  While many of the allegations in the plaintiff's complaint pertain to discrete instances of disparate treatment (for example, specific dates on which she requested and was denied a promotion, and dates on which she requested and was denied family and medical leave), Compl. ¶¶ 26-36, 40, the plaintiff also alleges "continuing violations" of her civil rights, such as consistent harassment from her co-workers, id. ¶¶ 45-48.  Because there is a statutory period of 180 days within which the plaintiff must have requested counseling with respect to these alleged "continuing violations," the Court must first resolve whether it can, under the "continuing violation doctrine," exercise subject-matter jurisdiction over those claims based on events that allegedly occurred before, during, and after the statutory time period for participation in counseling and mediation.

The continuing violations doctrine arises from the principle that where a statute sets a specific time limit within which a claim for relief must be made, there may be instances in which evidence of violations that occurred outside of that statutory window may nonetheless be

considered.  See Morgan v. Nat'l R.R. Passenger Corp., 232 F.3d 1008, 1015 (9th Cir. 2000)

(finding that a plaintiff can demonstrate a continuing violation by "showing a series of related

acts[,] one or more of which are within the limitation period—a serial violation.  A serial

violation is established if the evidence indicates that the alleged acts of discrimination occurring

prior to the limitations period are sufficiently related to those occurring within the limitations

period"), rev'd, 536 U.S. 101 (2002).  Upon review of the Ninth Circuit's decision in Morgan,

however, the Supreme Court determined that the Ninth Circuit was incorrect to apply the

continuing violations doctrine in such a broad sense, so as to allow any related claims outside the

statutory period to be considered so long as one such claim occurred within the statutory

window.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002).  Instead, the Supreme

Court drew a distinction between "[d]iscrete acts[,] such as termination, failure to promote,

denial of transfer, or refusal to hire" which are easily identifiable and each of which "constitutes

a separate actionable 'unlawful employment practice,'" id. at 114, and hostile environment

claims, which by "[t]heir very nature involve[] repeated conduct," id. at 115.  Thus, the Morgan

Court held that where discrete acts are concerned, the district court would only have subject-

matter jurisdiction over those claims that actually occurred during the 180-day statutory period.

Id.  With respect to continuing violation claims, however, the Court held: "[p]rovided that an act

contributing to the claim occurs within the filing period, the entire time period of the hostile

environment may be considered by a court for the purposes of determining liability," id. at 117.

Accordingly, the continuing violations doctrine applies to allegations which, when considered

collectively, constitute a hostile environment claim.  In making this determination, the Court

reasoned that "[t]he 'unlawful employment practice' . . . cannot be said to occur on any

particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete

acts, a single act of harassment may not be actionable on its own." Id. at 115 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  Therefore, based on the Supreme Court's decision in Morgan, a district court has subject-matter jurisdiction over any discrete claims falling within the statutory period for which the plaintiff has exhausted her administrative remedies, and any continuing violation claims that collectively constitute a hostile work environment claim, so long as one of the allegedly discriminatory acts underlying the hostile work environment claim occurred during the statutory time period.

## C.  The plaintiff's § 1311 and § 1312 claims

The plaintiff's § 1311 and § 1312 claims include discrete acts, such as her claims that she was not promoted annually to Grade 13 salaried positions as she contends she was promised, Compl. ¶¶ 27-37, the failure to grant her request for leave in 2009, id. ¶ 40, and the failure to grant her request to work at home under the Capitol Police's Telework policy, id. ¶ 43.  The plaintiff's complaint also includes alleged continuing violations, such as her claims that she was "mistreated, harassed, intimidated[,] and disrespected" by her supervisor and other employees on a daily basis, id. ¶ 45, and that "[o]n an almost daily basis, [Ms.] DeMar[] and other employees harassed [her] with a continuous stream of text messages[,] although they were all physically in the same office," id. ¶ 47.

In her October 14, 2010 request for counseling, the plaintiff alleged "harassment, unfair discipline, lack of promotion, disparate treatment and denial of advanced paid leave for FMLA purposes because of sex, disability, and reprisal in violation of sections 201, 202[,] and 207 of the [CAA]."  Defs.' Mem., Ex. 1 (Notice of Invocation of Mediation) at 1.  Under the law of this Circuit, see Settlemire, 198 F.3d at 920, the Court must first determine whether the plaintiff has proven that this Court has subject-matter jurisdiction over her § 1311 and § 1312 claims.  In this

analysis, the Court must examine whether any of the discrete acts that she asserts constitute discrimination occurred outside the 180-day statutory window, or if any of the conduct giving rise to the continuing violation claims occurred at least once within the statutory window.  If any of the discrete acts the plaintiff contends amounted to discrimination occurred outside of the 180-day statutory window or if none of the alleged conduct that would give rise to a continuing violation claim occurred at least once within the statutory window, under <u>Morgan</u>, the plaintiff's claim arising from such conduct would fall outside this Court's subject-matter jurisdiction.

The plaintiff's request for counseling was dated October 14, 2010.  Compl. ¶ 49.  Therefore, to fall within the applicable statutory 180-day window, the defendant's allegedly discriminatory behavior must have occurred between April 17, 2010, and October 14, 2010.  In regards to all but one of the plaintiff's § 1311 discrete claims—the USCPB's failure to promote her to the Grade 13/Step 1 level in September 2006, Compl. ¶ 27, the USCPB's failure to promote her to the Grade 13/Step 2 level in September 2007, <u>id.</u> ¶ 29, the USCPB's failure to promote her to the Grade 13/Step 3 level in September 2008, <u>id.</u> ¶ 31, and the USCPB's failure to promote her to the Grade 13/Step 4 level in September 2009, <u>id.</u> ¶ 33— all of these claims must be dismissed because each constitutes a discrete act that falls outside the 180-day statutory window, due to the plaintiff's failure to timely exhaust her administrative remedies as to these claims, which precludes this Court from having subject-matter jurisdiction over them.  The remaining § 1311 discrete claim—the defendant's failure to promote the plaintiff to the Grade 13/Step 5 level in September 2010, <u>id.</u> ¶ 36—did occur within the 180-day statutory window.  The Court, therefore, has subject-matter jurisdiction over this claim.

The plaintiff's § 1312 discrete claim—that she was denied forty hours of family and medical leave in 2009, <u>id.</u> ¶ 40—must also be dismissed because it occurred more than 180-days

prior to the plaintiff's request for counseling, resulting in the plaintiff's failure to timely exhaust her administrative remedies as to this claim.  Accordingly, the Court does not have subject-matter jurisdiction over this claim.  While the plaintiff also alleges that there were other instances during her tenure as a Legal Administrative Analyst when her requests for family and medical leave were denied, Compl. ¶ 39, and her requests to work from home under the defendant's Telework policy were denied, id. ¶ 44, she incorrectly characterizes these claims as continuing violations.  The Court agrees with the defendant that the failure to grant a request for family and medical leave and the failure to grant a request for Telework are more accurately categorized as discrete claims, as in both instances the requests were filed and thereafter rejected on specific dates.  See, e.g., Ragsdale v. Holder, 668 F. Supp. 2d 7, 19 (D.D.C. 2009) (finding that the denial of a request for leave is more akin to a discrete act such as failure to promote, termination, or refusal to hire); Kilby-Robb v. Spellings, 522 F. Supp. 2d 148, 164 (D.D.C. 2007) (disallowing the plaintiff from using the denial of a Telework claim as support for a hostile work environment claim).  Thus, the denial of family and medical leave and Telework privileges had to occur within the statutory window in order for this Court to have subject-matter jurisdiction to hear those claims.  Because the plaintiff asserted both forms of these claims as continuing violations, she did not plead specific instances on which these allegedly discriminatory activities occurred.

Under a Rule 12(b)(1) analysis, the Court must scrutinize the plaintiff's allegations more closely, Macharia v. United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003), and the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction over her claims, Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  The plaintiff's unspecified allegations that "[d]uring her tenure as a Legal Administrative Analyst . . . [she] requested advancements of leave for personal and family medical issues pursuant to the

Family and Medical Leave Act . . . [and that] most requests were denied although other [employees] were granted such advancements of leave," Compl. ¶ 39, and that "[she] requested numerous authorizations to perform her duties under the Telework policy . . . [and that] her requests were denied," id. ¶ 43, do not establish by a preponderance of the evidence that any one of these discrete incidences of denial of leave or denial of Telework privileges occurred within the 180-day statutory window.  Thus, these claims also fail to survive the defendant's 12(b)(1) motion to dismiss, and the only discrete claim for which the plaintiff has established this Court's jurisdiction is the single § 1311 claim that the USCPB failed to promote her to the Grade 13/Step 5 level in September 2010, id. ¶ 36.

Turning to the plaintiff's continuing violation claims, which include harassment, unfair discipline, and disparate treatment, all of which she asserts created a hostile work environment, the Court finds that these claims survive the defendant's 12(b)(1) motion.  The plaintiff contends that most of this activity occurred "on an almost daily basis," Compl. ¶ 47, which, drawing all reasonable inferences in favor of the plaintiff, Rann, 154 F. Supp. 2d at 64, suggests that the discriminatory conduct occurred within the statutory window of April 17, 2010, to October 14, 2010.  As the Supreme Court explained in Morgan, "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct . . . The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  536 U.S. at 115.  Therefore, these claims, under Morgan, survive the defendant's 12(b)(1) motion to dismiss, because the plaintiff timely exhausted her administrative remedies by disclosing this behavior in her October 2010 request for counseling. Compl. ¶ 49.

Next, the Court must determine whether any of the plaintiff's claims over which this Court has jurisdiction survive the defendant's 12(b)(6) arguments that she failed to state a claim on which relief can be granted.  <u>See</u> Defs.' Mem. at 3.  The Court will first consider the plaintiff's remaining § 1311 discrete claim, accepting as true both the allegations that in September 2010, the defendant failed to promote the plaintiff to the Grade 13/Step 5 level, Compl. ¶ 36, and that this was a promotion that had been promised to the plaintiff and to which she was allegedly entitled, <u>id.</u> ¶ 24.  Evaluating the specificity of this claim and the plausibility that the plaintiff would be entitled to relief if this claim were proven, the Court finds that the September 2010 failure to promote allegation does not survive the defendant's Rule 12(b)(6) motion to dismiss because the complaint does not allege facts sufficient to demonstrate that the USCPB's failure to promote her to the Grade 13/Step 5 level constituted disparate treatment.  The plaintiff alleges that she "requested promotions as outlined [in the complaint] over a six year period, but she never received the increases in Grade and Step, as expected and requested, although other employees in her office received such promotions and increases."  <u>Id.</u> ¶ 37.  Even taking this allegation to be true, the Court cannot find that the USCPB's failure to promote the plaintiff to the Grade 13 level is evidence of discrimination, especially considering that the plaintiff's pay was increased each year, albeit through a step increase within the Grade 12 level.  <u>Id.</u> ¶¶ 27-37.  If the plaintiff had factual support for the statement that other employees were granted the "promotions and increases" she requested, <u>id.</u> ¶ 37, those facts should have been included in the complaint.  The plaintiff's mere allegation that other employees were promoted each year to positions that she requested, even considered in the light most favorable to the plaintiff, is alone insufficient to show that the failure to promote her to the Grade 13 level constituted unlawful discrimination.  Furthermore, the plaintiff's complaint alleges that she experienced

discrimination against her on the basis of her age and sex.[8]  However, she asserts no allegations

in the complaint from which it can even be inferred that the plaintiff was treated differently

because of her age or sex.  There is not a single point in the complaint where the plaintiff

presents a factual allegation even remotely related to age or sex discrimination; rather, she

simply makes the conclusory statement that the failure to promote her to the Grade 13 level was

based on her age and sex.  Id. ¶ 55.  This allegation amounts to no more than " an unadorned,

the-defendant-unlawfully-harmed-me accusation," Iqbal, __ U.S. at __, 129 S. Ct. at 1949 (2009)

(citing Twombly, 550 U.S. at 555-57), and as such the claim must be dismissed.

    With respect to the plaintiff's § 1311 claim that she was "harassed . . . [o]n an almost a

daily basis" by her supervisor and her co-workers "with a continuous stream of text messages[,]

although they were all physically in the same office," Compl. ¶ 47, the Court finds that these

claims similarly fail to state a claim upon which relief may be granted.  While the plaintiff does

attempt to present factual support for this hostile work environment claim, her mere assertion

that her supervisor and other employees "harassed [her] with e-mails, text messages[,] and

telephone messages demanding that she contact them although she was on leave," id. ¶ 48, is

insufficient, without more, to adequately plead a hostile work environment claim.  Namely, the

plaintiff's statements that she was "mistreated, harassed, intimidated[,] and disrespected" by her

supervisor and co-workers "on a daily basis," id. ¶ 45, does not comply with Rule 8(a)(2) which

requires a "short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  Once again, rather

---

[8]     Notably, in her request for counseling filed on October 14, 2010, the plaintiff alleged "harassment, unfair discipline, lack of promotion, disparate treatment[,] and denial of advanced paid leave for FMLA purposes because of sex, disability and reprisal. . .  in violation of the CAA."  Defs.' Mem., Ex. 1 at 1.  However, nowhere in her complaint filed in this Court does she allege discrimination on the basis of a disability.  The Court, therefore, fails to understand why the plaintiff has alleged age discrimination in this case while having alleged discrimination on the basis of a disability in her request for counseling.

than pleading factual allegations in support of her claims, the plaintiff's statement that she was "mistreated, harassed, intimidated[,] and disrespected" by her co-workers, Compl. ¶ 45, is nothing more than a legal conclusion.  In other words, the plaintiff does not explain <u>how</u> she was "mistreated, harassed, intimidated[,] and disrespected"; she merely avers in conclusory terms that she was.  In granting the defendant's motion to dismiss the plaintiff's hostile work environment claims, however, the Court will do so without prejudice,[9] according the plaintiff a further opportunity to allege more specifically in a subsequent action, if there is a basis for doing so, the instances on which the alleged harassment occurred and the details as to how the content of the text messages and e-mails constituted harassment.

In summary, regarding the plaintiff's § 1311 and § 1312 claims, the Court will grant the defendant's motion to dismiss all of the plaintiff's claims for failure to promote that occurred prior to April of 2010, pursuant to Rule 12(b)(1) because the plaintiff did not timely exhaust her administrative remedies in accordance with the CAA as to those claims.  Additionally, the plaintiff's claims that she was repeatedly denied family and medical leave as well as the option to work from home under the defendant's Telework policy are dismissed under Rule 12(b)(1), because the plaintiff does not demonstrate by a preponderance of the evidence that the Court has subject-matter jurisdiction over these claims, which are properly classified, as discrete claims. The plaintiff's claim that the defendant's failure to promote her to the Grade 13/Step 5 level in September 2010, though timely, will be dismissed under Rule 12(b)(6), because the plaintiff fails

---

[9]     See <u>Belizan v. Hershon</u>, 434 F.3d 579, 583 (D.C. Cir. 2006)  (emphasis in original) (citing <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1209 (D.C. Cir. 1996)) ("The standard for dismissing a complaint with prejudice is high: dismissal <u>with prejudice</u> is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency… [T]herefore, a complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6)[,] but not dismissal with prejudice.") (internal quotation marks omitted).

to present even a single fact suggesting that the failure to promote her to this particular grade level amounted to discriminatory treatment based on her age or sex.  Finally, the Court will also grant the defendant's motion to dismiss under Rule 12(b)(6) the plaintiff's hostile work environment claim, comprised of allegations that she was continually "mistreated, harassed, intimidated[,] and disrespected" by her supervisor and co-workers, because she has failed to present any factual allegations of harassment.  Accordingly, the Court will dismiss all of the plaintiff's § 1311 and § 1312 claims.

D. The plaintiff's § 1317 claim

Section 1317 of Title 2 of the United States Code prohibits any intimidation, reprisal, or discrimination against "any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter."  2 U.S.C. § 1317(a).  As noted in § 1401, violations of § 1317 are subject to the same exhaustion of administrative remedies before a district court has subject-matter jurisdiction over the claim.[10]

The plaintiff's § 1317 claim states that "[a]fter the March 1, 2011[] mediation, while at home and under the care and supervision of her doctor, [Ms.] DeMar constantly e-mailed [the p]laintiff demanding that she return to work," Compl. ¶ 84, and that "[the d]efandants wrongfully served [the p]laintiff with a 'Leave Restriction' report which required [her] to provide medical documentation for every hour she was not at work although she had previously provided said

---

[10]     Section 1401 also applies to an aggrieved employee asserting a § 1317 claim; thus, an aggrieved employee alleging a § 1317 violation must also timely exhaust her administrative remedies as required by the CAA before a district court will have subject-matter jurisdiction to hear that claim.  2 U.S.C. § 1401.

documentation."  Id. ¶ 85.  The plaintiff contends that these actions were in retaliation for the unsuccessful March 2011 mediation, id. ¶¶ 82-88, which she initiated regarding the alleged "harassment, unfair discipline, lack of promotion, disparate treatment[,] and denial of advanced paid leave for FMLA purposes," Defs.' Mem., Ex.1 (Notice of Invocation of Mediation) at 1.

Assessing first whether the plaintiff's § 1317 claim survives the defendant's jurisdictional arguments for dismissal, the Court finds that the plaintiff did not exhaust her administrative remedy as to this claim.  Therefore, the defendant's motion to dismiss must be granted as to this claim.  While the Court certainly understands how an employee who believes that she was wronged by her employer may view as futile the need to further engage in an administrative process conducted by the employer to attempt to remedy a violation that she believes resulted from her prior participation in that same administrative process, the language of the CAA is clear regarding this Court's jurisdiction.  Section 1401 explicitly states that the resolution of any claims arising under §§ 1311-1317 of the CAA requires the completion of the administrative process before a district court has jurisdiction to hear the claim.  2 U.S.C. § 1401.  Here, the plaintiff alleges that she was retaliated against in March 2011, after—and directly because of— her completed but unsuccessful participation in mediation.  Compl. ¶¶ 52, 87.  It is, therefore, impossible that she could have exhausted her administrative remedy as to this claim during the March 2011 mediation, because the alleged violation had not yet occurred.  And there is no indication that the plaintiff pursued her administrative remedies following the March 2011 mediation but before filing this lawsuit.  While the plaintiff did allege a violation of § 1317 in her October 2010 request for mediation, Defs.' Mem., Ex. 1 at 1, the alleged violation could not possibly have been the March 2011 instance of purported retaliation, which would have occurred after the completion of the mediation.  Moreover, as this Court held in Gordon, "the completion

of counseling and mediation for one set of violations does not give the court jurisdiction over related claims of retaliation that occurred after counseling had commenced; the administrative remedies must be exhausted for each claim." 750 F. Supp. 2d at 92.  For this reason, in order for this Court to have subject-matter jurisdiction over the plaintiff's § 1317 retaliation claim, the violation must have occurred within the statutory time period, and she must have requested counseling and completed mediation in accordance with § 1401, which she did not do.  Having failed to exhaust her administrative remedies as to the alleged retaliation she suffered after the failed March 2011 mediation, the defendant's motion to dismiss the plaintiff's § 1317 claim pursuant to Rule 12(b)(1) must be granted.[11]

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) is granted.

**SO ORDERED** this 28th day of November, 2011.[12]

REGGIE B. WALTON
United States District Judge

---

[11]    The plaintiff did allege a violation of § 1317 in her October 2010 request for mediation, Defs.' Mem., Ex. 1 at 1, but because retaliation is a discrete claim, she would have to allege more specifically the way in which she was retaliated against after April 2010 in order to bring a claim under § 1317 in this Court.  See supra at 11-13.  If the plaintiff can present a specific instance of retaliation that occurred between April 2010, and October 2010, she may be able to show that she exhausted her administrative remedies for such a claim.

[12]    The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.